UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-61877-CIV-MORENO/STRAUSS

TREVISAN HUDSON,
EDWARD SALVATORE TEAGUE, and
FARAZ KHAN,

      Plaintiffs,

vs.

P.I.P., INC., and
WAYNE P. TEAGUE,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendants' Renewed Motion to Stay Proceedings and Compel Arbitration and Incorporated Memorandum of Law ("Motion") (DE 65) and has been referred to the undersigned to take all necessary and proper action as required by law, with respect to any and all pretrial matters, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida (DE 64).[1]  For the reasons set forth below, the undersigned RECOMMENDS that the Motion (DE 65) be **DENIED** without prejudice.

---

[1] The Eleventh Circuit has not ruled on whether motions to compel arbitration are dispositive, and Courts are split on the issue.  *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) (finding that motions to compel arbitration are non-dispositive in the sense that ruling on such motions do not dispose of a case, a claim, or a defense because granting the motion "merely suspend[s] litigation while orders denying it continue the underlying litigation"); *see also PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (finding a motion to stay pending arbitration is not dispositive because, "[e]ven if such a motion is granted, the court still retains authority to dissolve the stay or . . . to make orders [after arbitration is concluded] with respect to the arbitral award"); *cf., City of Almaty, Kazakhstan v. Sater*, No. 19CV2645AJNKHP, 2019 WL 6681560, at *1 (S.D.N.Y. Dec. 6, 2019) (stating that, while the Second Circuit "has not yet addressed the issue," a number of District Court decisions within the Circuit have concluded that these motions are non-dispositive); *compare with Dumas v. Warner*

I.      BACKGROUND

A.      Procedural History

On January 10, 2019, Plaintiffs filed a Third Amended Complaint alleging violations of the Fair Labor Standards Act ("FLSA") (DE 40).[2]   Plaintiffs specifically "seek recovery of damages . . . and further seek[] interest, costs, and attorneys' fees pursuant to 29 U.S.C. § 216(b)" (DE 40 ¶ 21).   On January 22, 2019, Defendants filed Defendants' Renewed Motion to Stay Proceedings and Compel Arbitration and Incorporated Memorandum of Law (DE 43).   On February 6, 2019, United States Magistrate Judge Barry S. Seltzer issued a Report and Recommendation finding that the fees and costs provisions in the arbitration agreements, by requiring each party to pay its own fees and expenses, were in contravention of the FLSA and thus unenforceable (DE 50 at 3-4).   *See Schatt v. Aventura Limousine & Transp. Service, Inc.*, 2010 WL 4942654, at *3 (S.D. Fla. 2010).   The Report and Recommendation also concluded that the arbitration clauses in the agreements were unenforceable in their entirety because they did not contain a severability provision that allowed for the removal of the offending fees and costs provisions (DE 50 at 4).   On March 7, 2019, the District Court entered an Order Denying Motion

_____

*Literary Grp., LLC*, No. 16-CV-00518-RM-NYW, 2016 WL 9344244, at *2 (D. Colo. Aug. 8, 2016) (recognizing "that the law in the Tenth Circuit is unclear as to whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)" and citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1189 (D. Colo. 2013) (determining that a motion to compel was dispositive because the district court would apply a *de novo* review to the magistrate judge's application of state contract law)). The undersigned concludes that the cautious, prudent approach is to enter a report and recommendations rather than an order.  *See Amat v. Rey Pizza Corp.*, 204 F. Supp. 3d 1359, 1362–63, 1367-68 (S.D. Fla. 2016) (recommending that arbitration be compelled, recommending that the district court dismiss the case rather than stay it pending arbitration because all issues raised were arbitral, and finding that a report and recommendations was appropriate in the absence of a ruling from the Eleventh Circuit that motions to compel arbitration are non-dispositive motions).

[2] Plaintiffs allege that Defendants failed to pay all wages earned, overtime, and for Defendant Hudson, minimum wages (DE 40 at ¶¶ 11-13, 16).

to Compel Arbitration and Order Adopting Magistrate Judge's Report and Recommendation ("Order") (DE 55).

Defendant P.I.P. Inc. appealed the District Court's Order (DE 56); and, on November 22, 2019, the Eleventh Circuit issued its opinion on appeal. The Eleventh Circuit affirmed the District Court's conclusion that the fees and costs clauses within the arbitration provisions are unenforceable. However, the Appellate Court reversed the District Court's conclusion that the arbitration provisions are unenforceable in their entirety solely because they lack a severability provision and remanded the case to the District Court to determine whether the fees and costs clauses are severable as a matter of Florida law (DE 63 at 9-10).[3]

On February 3, 2020, Defendants filed their renewed Motion (DE 65). Plaintiffs have responded to the Motion (DE 69), and Defendants have replied (DE 70). The Motion is, therefore, ripe for review.

      B.   <u>The Motion</u>

In their Motion, Defendants claim that the fees and costs clauses of the arbitration provision in the employment agreements at issue are severable as a matter of Florida law and can thus be severed even without a severability clause (DE 65 at 4-5). Defendants also argue that the arbitration agreements are otherwise valid and binding. *Id.* at 7-8. Therefore, Defendants ask that the Court grant their Motion, compel arbitration, and stay the proceedings pending arbitration. *Id.* at 9.

---

[3] The District Court noted in its referral that "if the fees and costs clauses are determined severable, the Plaintiffs' additional arguments—that the arbitration provisions are unenforceable because the Plaintiffs did not sign the employment agreements and because the Fair Labor Standards Act claims go beyond the scope of the employment agreements—were not addressed in the initial Report and Recommendation" (DE 64 at 1 n. 1).

Plaintiffs respond that they did not agree to arbitrate their claims, and they allege that they never signed or even saw the employment agreements during or before their employment with Defendants (DE 69 at 1). Plaintiffs also argue that their FLSA claims go beyond the scope of the allegedly forged agreements. *Id.* at 7. Furthermore, Plaintiffs argue that the allegedly forged agreements are unenforceable because they deny the right to recover fees and costs pursuant to 29 U.S.C. 216(b), which is a substantive right of the FLSA.[4] *Id.* at 11. According to Plaintiffs, the fees and costs clauses in the arbitration provisions of the allegedly forged agreements are not severable as a matter of Florida law. *Id.* at 13.

As more fully articulated herein, the undersigned finds that the fees and costs provisions are severable and that the FLSA claims are within the scope of the purported agreement to arbitrate. Nonetheless, because there is a genuine issue about whether the Plaintiffs agreed to arbitrate, the undersigned concludes that the Court must hold a jury trial to determine whether an arbitration agreement exists in the first instance.

II.     LEGAL STANDARDS

A district court considers three factors when reviewing a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009).

The Federal Arbitration Act ("FAA") governs arbitration agreements and "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d

---

[4] For reasons stated herein, the Court concludes that the unenforceable fees and costs provisions are severable; therefore, these provisions do not render the arbitration agreements unenforceable.

1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014)).  *See also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting that the FAA sets forth "a liberal federal policy favoring arbitration agreements").  In relevant part, the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  While courts presume arbitrability relative to the scope of arbitration, the savings clause of the FAA "allows courts to refuse to enforce arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract."  *Epic Sys. Corp.*, 138 S. Ct. at 1622 (explaining the grounds for invalidating agreements to arbitrate as "generally applicable contract defenses, such as fraud, duress, or unconscionability"); *see also id.* at 1632 (Thomas, J., concurring) ("[G]rounds for revocation of a contract are those that concern the formation of the arbitration agreement.") (internal quotations and citations omitted).  Thus, "state law generally governs whether an enforceable contract or agreement to arbitrate exists."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

Furthermore, courts apply a summary-judgment-like standard to determine whether an agreement to arbitrate exists.  *Bazemore*, 827 F.3d at 1333 (citing Fed. R. Civ. P. 56(a)).  Accordingly, where "there is no genuine dispute as to any material fact concerning the formation of [an arbitration] agreement," a court may decide "as a matter of law that [the] parties did or did not enter into an arbitration agreement."  *Id.*  (stating that "entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (internal quotations and citations omitted).  "A mere scintilla of evidence in support of the

nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014).

III.     ANALYSIS

      A.     Whether the Fees and Costs Clauses are Severable under Florida Law

The undersigned finds that the unenforceable fees and costs clauses of the arbitration provisions are severable.  According to the Eleventh Circuit, "[a] court should deny the motion to compel arbitration only where the invalid terms of the arbitration clause render the entire clause void as a matter of state law." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005).  In other words, "[i]f the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement." *Id.*  Under Florida law, "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821–22 (Fla. 1953) (hereinafter "*Local No. 234*").  In *Local No. 234*, the Florida Supreme Court found that an illegal provision in a contract – requiring an employer to operate as a "closed shop"[5] – was the main inducement for the parties to enter the agreement.  *Id.*  Although much of the contract dealt with "wages, hours and

---

[5]  In *Local No. 234*, a union and an employer entered into an agreement wherein the union agreed that none of its members would work for employers not parties to the agreement, and the employer agreed that it would hire only union members in good standing with the union—a provision to operate as a "closed shop."  *Id.* at 820.  Closed shop practices are illegal pursuant to the Florida Constitution, Article I, section 6, which states in relevant part: "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization."  Fla. Const. art. I, § 6.

conditions of labor," those details were indivisible from the illegal provision requiring the contracting parties to operate as a closed shop because removing that provision would not leave a "valid working arrangement fairly reflecting the original mutual understanding between the parties." *Id.* at 822. *See also J.R.D. Mgmt. Corp. v. Dulin*, 883 So. 2d 314, 316 (Fla. 4th DCA 2004) (explaining the severability test as whether the parties gave "a single assent to the whole transaction, or [whether] they assent[ed] separately to several things"). Stated another way, in *Local No. 234*, the provision requiring the parties to operate as an illegal closed shop was the main purpose for forming the agreement, and therefore not severable from the rest of the terms.

Here, the Employee Commission Agreements ("Agreements") containing the arbitration agreement at issue state that the Plaintiffs would be paid the greater of: (1) minimum hourly wages and overtime; or (2) commissions (DE 65-1; DE 65-2; DE 65-3). The Agreements detail how sales commissions will be calculated and how employees will be paid in all but one their numbered paragraphs. *Id.* The last numbered paragraph in each of the Agreements addresses arbitration and states:

> Any dispute arising out of this agreement shall be resolved by mediation or arbitration, each party agrees, the parties will equally divide cost of mediation. Each party to any arbitration will pay its own fees and expense, including attorney fees and will share other fees of arbitration. The arbitration [sic] may conduct the hearing in absence of either party. After notified of such hearing.

*Id.* The Agreements do not contain a severability clause. *Id.*

As Defendants argue, even without a severability provision, this Court can sever the unenforceable aspect of the arbitration clause—that each party pays its own fees and costs— because the fees and costs provision is not the main purpose for making the arbitration agreement and, therefore, does not go to the essence of the parties' agreement to arbitrate disputes (DE 65 at 5). A plain reading of the language of the arbitration clause indicates that its main purpose is to

define the forum for resolving disputes pertaining to compensation as outlined in the Agreements. *See Burns v. Barfield*, 732 So. 2d 1202, 1205 (Fla. Dist. Ct. App. 1999) (explaining that "the language [of a contract] is the best evidence of the parties' intent and its plain meaning controls"). The parties then additionally agree that, relative to arbitration, each party "will pay its own fees and expense, including attorney fees and will share other fees of arbitration" (DE 65-1; DE 65-2; DE 65-3). Unlike the contract in *Local No. 234*, where the contract's illegal provision represented the only reason for even entering into a contract, the illegal portion of the arbitration clause in the instant litigation does not represent the only, or even the primary, reason for the parties to have agreed to arbitrate disputes. Indeed, the unenforceable provision regarding fees and costs is merely incidental to the agreement to resolve certain disputes through arbitration. Furthermore, removing the offending fees and costs provision still leaves "valid legal promises on one side which are wholly supported by valid legal promises on the other" side. *Local No. 234*, 66 So. 2d 818, 821–22 (Fla. 1953). In an at-will state such as Florida, continued employment supplies valid consideration for an arbitration provision. *See Hernandez v. Acosta Tractors, Inc.*, No. 15-23486-CIV, 2015 WL 12778790, at *2 (S.D. Fla. Nov. 12, 2015) (Moreno, J.) (holding that plaintiff's "continued employment served as sufficient consideration for his agreement to arbitrate"). Likewise, here the agreement to arbitrate "[a]ny dispute arising out of this agreement" may be supported by valid consideration in the form of continued employment independent of the fees and costs provision (DE 65-1; DE 65-2; DE 65-3). Therefore, the undersigned concludes that the fees and costs provision is independent of, and ancillary to, the arbitration provision's main purpose of designating the forum for resolving disputes within its scope. Accordingly, despite the lack a severability clause, the undersigned finds that the offending fees and costs provision is severable under Florida law.

B.      Whether the FLSA Claims are within the Scope of the Arbitration Clauses

In disputing that the FLSA claims fall within the scope of the arbitration clauses, Plaintiffs first argue that "the scope of the arbitration provision is limited to the agreement itself" (DE 69 at 7). That is, Plaintiffs contend that the provision to arbitrate pertains only to breach-of-contract claims and not to statutory claims under the FLSA. *Id.* at 9-10. Plaintiffs cite *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) in support of this proposition. However, in *Princess Cruise Lines, Ltd.*, the Eleventh Circuit instructed that foreseeability is the proper standard for resolving "whether a dispute arises out of a contract." *Id.* (citation omitted). There, the Court found that the plaintiff's tort claims did not bear any relationship to an agreement to arbitrate claims "arising out of" her status as an employee. *Id.* As the Court explained "'[a]rising out of' requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Id.*

Here, as in *Princess Cruise Lines, Ltd.*, the arbitration clause pertains to disputes "arising out of [the agreement]." In the instant case, the Agreements outline in detail how much Plaintiffs will be paid for various kinds of work. Encompassing all of this detail in each of the Agreements, however, is a provision that states: "[t]he following commission or to be paid minimum hourly wages & overtime [sic] whichever is greater" (DE 65-1; DE 65-2; DE 65-3). This Court interprets the foregoing provision to mean that Defendant P.I.P., Inc. agreed to pay the greater of minimum hourly wages and overtime ("Wages"), or the commissions that were detailed. There is no reason for the "whichever is greater" language if the Agreements did not intend to specify that Plaintiffs' compensation involved commissions or Wages depending upon a calculation of what would render the greater payment. *Princess Cruise Lines, Ltd.*, 657 F.3d at 1218 (quoting *In re Hedrick*, 524 F.3d 1175, 1189 (11th Cir.2008) as "stating that a statutory interpretation that renders one

provision superfluous ... is an interpretative no-no") (internal quotation omitted).  Because the agreements to arbitrate directly pertain to disputes arising out of the corporate Defendant's obligation to pay minimum hourly wages and overtime as specified in the Agreements, the undersigned concludes that it is foreseeable that the agreements to arbitrate would include FLSA claims.  Accordingly, the undersigned finds that Plaintiffs' argument lacks merit.

Plaintiffs next argue that the arbitration clause fails to "generally and fairly inform the signatories that [the agreement to arbitrate] covers statutory claims" (DE 69 at 10-11), citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998).  However, *Paladino* is inapposite.  In *Paladino* the plaintiff was fired and sued for discrimination under a Florida statute.  *Id.* at 1056.  There, the arbitration agreement had two incongruent clauses describing its scope.  *Id.* at 1057.  One clause appeared all-inclusive by referencing the settlement of claims "arising out of . . . employment" and the second clause authorized the arbitrator "to award damages for breach of contract only."  *Id.* at 1057-59.  The Eleventh Circuit reasoned that, because the arbitration agreement precluded the arbitrator from awarding damages provided by statute, the parties did not actually intend to submit statutory disputes to arbitration despite the broad "arising out of . . . employment" clause.  *Id.*

Here, unlike in *Paladino*, the arbitration clause does not specifically limit the arbitrator to awarding damages only for breach of contract claims.  Rather, the arbitration clause in the present case is like the first "arising out of" clause in *Paladino*, which the Eleventh Circuit viewed as "all-inclusive."  *Paladino*, 134 F.3d at 1057.  The undersigned thus concludes that Plaintiffs' argument is unavailing and that Plaintiffs' FLSA claims fall within the scope of the arbitration agreement.

C.      Whether Plaintiffs' Allegations of Fraud/Forgery Create Genuine Dispute

Under Florida law, the party seeking to enforce arbitration has the burden of proving "offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence." *Schoendorf v. Toyota of Orlando*, No. 608-CV-767-ORL-19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla.2004)).  Here, in support of their Motion, Defendants attach to it the Agreements purportedly signed by each of the Plaintiffs to establish that they had enforceable arbitration agreements (DE 65-1, DE 65-2, DE 65-3).  Defendants anticipated, when filing their Motion, that Plaintiffs would allege that the Agreements were forged (DE 65 at 7).  Thus, Defendants argue that the FAA requires no signature on a written agreement to arbitrate if mutuality of assent is otherwise present. *Id.* at 7-8.  Defendants fail to allege, however, facts to demonstrate how such mutuality of assent is satisfied in the instant litigation.  *Id.*  Therefore, the only evidence Defendants put forth to demonstrate the existence of an agreement are the signed Agreements themselves.

Plaintiffs indeed allege that they did not sign the Agreements that Defendants filed as exhibits (*see* DE 65-1, DE 65-2, and DE 65-3), that they never saw the Agreements before or during their employment with Defendants, and that they did not agree to arbitrate their claims (DE 69 at 1).  In support thereof, each Plaintiff provides a notarized affidavit swearing that: (1) their signature on the Agreement is fraudulent; (2) that they did not see the Agreement during or before their employment with Defendants; and (3) that they did not sign the Agreement purporting to contain their signature (DE 69-1, DE 69-2, DE 69-3).[6]  These affidavits are sufficient to create a

---

[6] In their reply, Defendants argue that Plaintiffs' affidavits disputing the Agreements' validity and existence merely purport to be sworn to and are not sworn to "under penalty of perjury" (DE 70 at 2) (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306-07 (5th Cir. 1988)).  The undersigned finds that Defendants' argument lacks merit.  Plaintiffs' affidavits are sworn affidavits and not unsworn declarations (DE 69-1, DE 69-2, DE 69-3).  *See* 28 U.S.C. § 1746 (stating, *inter*

genuine issue as to whether the Plaintiffs actually were aware of, or agreed to, the Agreements. Further, Plaintiffs demand a jury trial on all issues so triable that pertain to the allegedly forged Agreements (DE 69 at 1-2).

Defendants attempt to repel Plaintiffs' assertions that the signatures on the Agreements are forged by attaching as exhibits to their Reply other documents that Plaintiffs signed while employed in order to illustrate the similarity between the signatures that Plaintiffs acknowledge and those that Plaintiffs allege are forged (DE 70 at 2-3; DE 70-1; DE 70-2; DE 70-3). However, Defendants have the burden here to show that there is no genuine dispute as to any material fact. *See Bazemore*, 827 F.3d at 1333 (describing a summary judgment standard as applicable for determining whether an agreement to arbitrate exists). Defendants' argument and exemplars, while perhaps ultimately providing compelling evidence that the signatures on the Agreements are not forged, serve to emphasize the existence of a genuine dispute as to a material fact. Defendants proffered no additional support of their position that Plaintiffs signed the Agreements, apart from the Agreements themselves, even though Defendants anticipated that Plaintiffs would argue that their signatures on the Agreements were forged (DE 69 at 2). Accordingly, the undersigned finds that Plaintiffs' affidavits are sufficient to create a genuine dispute as to whether an arbitration agreement exists.

---

*alia*, that an unsworn written declaration may have the same effect as a sworn declaration where the unsworn declaration is subscribed by the declarant as true under penalty of perjury). In the instant case, Plaintiffs' affidavits each begin with the notary's statement: "BEFORE ME, the undersigned authority personally appeared [Plaintiffs' Name], who upon being first duly sworn, deposes and states as follows." Within the affidavits, Plaintiffs declare that "[a]ll of the representations herein are true and correct to the best of my ability and knowledge." Thus, the undersigned concludes that the affidavits contain the sworn statements of Plaintiffs unequivocally denying the existence of the Agreements and the arbitration provision contained therein.

Pursuant to 9 U.S.C. § 4, "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged in default . . . the court shall hear and determine such issue." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347–50 (11th Cir. 2017) (quoting 9 U.S.C. § 4 and finding a statutory right to a jury trial when "the party alleged to be in default" makes a specific demand for a jury trial, "on or before the return day of the notice of application," and on a specific issue related to the making of the arbitration agreement). Here, Plaintiffs specifically demand a jury trial in their timely response to Defendants' Motion, and they make the demand for a jury trial on all triable issues related to the purportedly forged Agreements and their enforceability (DE 69 at 1-2). While Plaintiffs do not articulate specifically that their jury trial demand pertains to "the making of the arbitration agreement," the undersigned finds that Plaintiffs' demand concerns the making of the Agreements containing the arbitration provision because the next five-and-a-half pages of Plaintiffs' seventeen-page response argues that the Plaintiffs never signed the Agreements and never agreed to arbitrate (DE 69 at 2-7). Therefore, the undersigned concludes that Plaintiffs have satisfied the statutory requirements for demanding a jury trial under 9 U.S.C. § 4.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the Motion (DE 69) be **DENIED** without prejudice, and that a trial be held pursuant to 9 U.S.C. § 4 to determine the existence of a binding arbitration agreement.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the

parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 13th day of March 2020.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno
Counsel of record